IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ALICE L. GEORGE, et. al.                                              PLAINTIFFS

v.                         NO. 3:13-CV-03058-PKH

ALBERT M. DAVIS, et. al.                                              DEFENDANTS

### BRIEF IN SUPPORT OF RESPONSE TO SEPARATE DEFENDANT XENONTI, INC.'S MOTION TO DISMISS AND FOR MORE DEFINITE STATEMENT

COME NOW the Plaintiffs, and for their Response to the Motion to Dismiss filed by Separate Defendant Xenonti, Inc. ('Xenonti"), state the following to-wit:

### Introduction

Xenonti has filed its motion to dismiss under Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction, and 12(b)(7), failure to join a party under Rule 19. Both challenges must fail. As described in more detail below, plaintiffs have pled that Xenonti has sufficient contacts with the State of Arkansas as a "Chase entity" (as defined in plaintiffs' Second Amended Complaint), and by virtue of its sole director, defendant David Hernon's, contacts in Arkansas over a twelve year period beginning in 2002. In support of its response, plaintiffs have attached public records from both the Arkansas and Texas Secretary of State's office, since the FRCP 12(b)(2) portion of Xenonti's motion raises a fact question as to the type and quality of contacts Xenonti has had with the State of Arkansas. The district court may take judicial notice of public records and may consider them on a motion to dismiss. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802–03 (8th Cir.2002); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

In addition, and as explained in plaintiffs' previous response to separate defendants' motion to dismiss, the Eureka Group is not a necessary party. It was a fraudulent entity created

for the sole purpose of furthering Albert Davis' scheme, in which he used various corporate forms to hide assets from plaintiffs. Even if the Court were to determine that the Eureka Group were a necessary party, the remedy would be amendment, not dismissal. Xenonti's motion should be denied.

## I. This Court has Jurisdiction over Xenonti, Inc.

Xenonti has argued that it has insufficient contacts with Arkansas to give rise to this Court's jurisdiction. This claim is demonstrably false. "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). Arkansas' long-arm statute confers jurisdiction to the fullest constitutional extent, so this Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus. v. Maples Inds., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction. Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In contrast, specific jurisdiction is viable only if the injury giving

rise to the lawsuit occurred within or had some connection to the forum state. *Id*. at 414. *See also Bell Paper Box*, 22 F.3d at 819 (identifying two types of personal jurisdiction—specific jurisdiction and general jurisdiction—and noting that the former "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," while the latter "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose").

Both theories of personal jurisdiction require "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). If a court determines that a defendant has minimum contacts with the forum state, it may then consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Xenonti, Inc. was registered as a for-profit corporation in Texas on June 13, 2008. Ex. "A", Texas Secretary of State Documents. Its registered agent for service was defendant David Hernon, 5250 Hwy 78, Ste. 750-130, Sachse, TX 75048. *Id*. Since filing this litigation, plaintiffs have discovered that Xenonti, Inc.'s corporate charter has been revoked. According to the Texas Secretary of State's records, Xenonti failed to pay its franchise taxes due in 2010, and was subject to a tax forfeiture on May 28, 2010. Under Texas law, when an entity fails to file a franchise tax report and/or pay franchise taxes, the secretary of state forfeits it under the Texas Tax Code. *See* Texas Secretary of State Business and Public Filings Termination and Reinstatement FAQs, http://www.sos.state.tx.us/corp/termreinfaqs.shtml#rein1, accessed last on November 20, 2014. While the entity can be reinstated at any time, as of this firm's search of the

Texas Secretary of State's records, Xenonti had not paid its franchise taxes current. Ex. "A", Texas Secretary of State Documents.

When the Texas Secretary of State forfeited Xenonti's charter, the entity Xenonti, Inc., was terminated. TEX. TAX CODE ANN. § 171.309; TEX. BUS. ORGS.CODE ANN. §§ 11.001(4), 11.251 (West Supp. 2012). While directors and officers cannot be held personally responsible for liabilities created or incurred prior to the corporate forfeiture, TEX. TAX CODE ANN. § 171.255 (West 2008); *Serna v. State*, 877 S.W.2d 516, 519 (Tex.App.-Austin 1994, writ denied), officers or directors can be held liable if, "[t]he liability [was] 'created or incurred' after the forfeiture of corporate privileges." *Serna*, 877 S.W.2d at 519; *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 26 (Tex. App. 2012).

Even if a corporation's corporate privileges are revived, the liability of a director or officer is not affected by the revival the corporate privileges or charter. *See id.* § 171.255(d); *In re Trammell*, 246 S.W.3d 815, 822 (Tex. App. 2008). Xenonti received a $150,000.00 payment from the Eureka Group's Arvest Bank account in January 2011, eight months after its charter had been forfeited. Under Texas law, where a corporation has forfeited its charter by virtue of failing to pay its franchise taxes, the Court must inquire as to the citizenship of the corporate directors for purposes of jurisdictional analysis. *Sun Packing, Inc. v. XenaCare Holdings, Inc.*, 924 F. Supp. 2d 749, 756 (S.D. Tex. 2012). According to Xenonti's response to plaintiffs' subpoena duces tecum, received December 3, 2013, defendant David Hernon is the sole director of Xenonti, Inc. Ex. "B", Xenonti, Inc. Response to Subpoena Duces Tecum.

Thus, the proper inquiry is whether this Court has jurisdiction over David Hernon. Plaintiffs submit that it does. First, the Second Amended Complaint makes the following factual allegations as to Xenonti, Inc.:

- ¶ 13: "Xenonti, Inc. is a is a citizen of the State of Texas by virtue of the fact that it is a Texas corporation organized under the laws of the State of Texas with its principal place of business in Sachse, Texas. Its Director and registered agent is David Hernon, 5250 Hwy 78, Suite 750-130, Sachse, Texas 75048.Xenonti, Inc. is the alter ego of the Davis Defendants herein."

- ¶ 19: "Separate Defendants CMI Holding Company, Inc., Chase Medical, Inc., Chase Medical Technologies, Inc., Phi Health, Inc. d/b/a Phi Med Products, Inc., **Xenonti, Inc**., and KDL Medical, Inc. a/k/a Chase Medical, a/k/a Cardiom Medical, Inc,. are related entities and are under the direct operation and control of some or all of the Davis Defendants, and are referred to hereinafter as the "Chase Entities". Upon information and belief, at all times relevant to this action, these associated entities were or are used to perpetuate the fraud on Plaintiffs as outlined in more detail below."

- ¶ 6: "On January 28, 2011, the Davis Defendants e-transferred $150,000 to Xenonti, Inc."

The Second Amended Complaint also makes the following factual allegations about David Hernon:

- ¶ 5: "Defendant David M. Hernon ("Mr. Hernon") is a citizen of the State of Indiana and resides in Fishers, Indiana."

- ¶ 24: "Upon information and belief, in late 1996, Mr. Davis approached Burton "Burt" George ("Mr. George") in Berryville, Arkansas, about becoming an investor in CMI. The two reached an agreement, and over the course of the next several years, Plaintiffs the George Trust and the George IRA, conducted a series of transactions with Defendants Albert Davis, David Hernon and Tex Wooters, all acting on behalf of CMI Holding Company, Inc. and Chase Medical, Inc…."

- ¶¶ 26-28: "In May 2002, Defendant David Hernon, on behalf of CMI sent a letter to Mr. George enclosing three stock certificates. Exhibit P, May 2002 Stock Certificates. In total, the certificates represented 80,000 shares of stock and were issued in the name of the George Trust. Id. Mr. Hernon also enclosed financial statements for 2001 and through April of 2002…Later, in November 2002, Mr. Hernon sent additional correspondence to Mr. George indicating a new stock option plan was being introduced, and enclosing a copy of the new plan for Mr. George's review…In May 2003, Mr. Hernon, on behalf of CMI, sent Mr. George a 1st quarter revenue summary for the corporation for his review.

- ¶ 30: "In December 2004, Mr. George sent a letter to Mr. Hernon accusing Mr. Davis of avoiding him when Mr. George went to see him in Dallas, Texas. In the letter, Mr. George also requested that the financial statements in the bond covenants be met and additionally requested information on the status of the

> senior debt. Mr. George also requested some additional documents related to a venture capital deal."
>
> - ¶ 41: "In November 2010, Mr. Davis and Mr. Hernon flew to Berryville, Arkansas to meet with Cindy George. Mr. Davis told Cindy George during the meeting that CMI was failing, and that the venture capitalist investors were trying to foreclose. Mr. Davis further explained that the George Trust and George IRA were in danger of "being left out in the cold.""
>
> - ¶ 47: "In December 2010, Cindy George, on behalf of the George Trust and the George IRA, began attempting to negotiate an assignment of the Georges' bonds and notes with Mr. Davis and Mr. Hernon. While the parties exchanged several drafts, no final draft was approved or executed."

*See generally* Plaintiffs' Second Amended Complaint [Dkt. 101]. Plaintiffs' Second Amended Complaint makes sufficient factual allegations as to Hernon's contacts with, and in, the State of Arkansas.

In his Answer to the Second Amended Complaint, David Hernon admits that he attended the November 2010 meeting in Berryville, Arkansas with defendant Albert Davis and Cindy George, but states he is without sufficient information to admit or deny whether the remaining factual allegations are true (interestingly, David Hernon is apparently without sufficient information to confirm to this Court that his signature appears on several Extension of Payment Due Date documents from 2002 to 2009, executed by he and representatives of plaintiff First National Bank of North Arkansas, custodian of the George IRA, attached to the Second Amended Complaint as Exhibits G-O). Hernon's contacts in Arkansas should be imputed to Xenonti, since Xenonti shed its corporate protections by virtue of its tax forfeiture.

Even if David Hernon's contacts in Arkansas were related to his business with one of the Chase entities, he has still had sufficient contacts in the state to subject him to the general jurisdiction of this Court. Further, plaintiffs have also pled that the "Chase entities," including Xenonti, were operated as the alter egos of the individual defendants, including David Hernon.

Thus, there can be no real separation between the corporate defendants and the individual defendants at this stage.

A perfect example of this sifting and mixing of corporate identities was revealed in Xenonti's response to plaintiffs' subpoena duces tecum: In response to plaintiffs' inquiry as to the email address of all current or past limited partners, employees or agents of Xenonti, the reply stated the David M. Hernon was the only current or past limited partner, employee or agent. Ex. "B", Xenonti Response to Subpoena Duces Tecum. The reply further stated his email address (on behalf of Xenonti) was dhernon@vannevargroup.com. *Id.* The Vannevar Group is another related entity owned or operated by some or all of the defendants, which has, at various times, shared an address in Texas also associated with Lux Imaging Group, LLC (another related entity) and the Eureka Group. The Vannevar Group also did business under the name Chase Medical, LLC, which is a derivative or related name to several of the previously identified Chase entities in which Burton George originally invested. There is no question that Xenonti, the Chase entities and the Davis defendants are related, and there is no question that David Hernon and Xenonti are subject to the jurisdiction of this Court by virtue of Hernon's activities individually and on behalf of Xenonti and the various other entities identified in this litigation.

## II. The Eureka Group is not an Indispensable Party

Xenonti next argues that this case must be dismissed because of plaintiffs' failure to add the Eureka Group as a party. Contrary to its argument, the acceptance of the $150,000.00 payment from the Eureka Group Arvest account is not the only allegation made against Xenonti, as illustrated above. Even if it were, the Eureka Group is not an indispensable party, either with relation to the claims against Xenonti or those against any of the other defendants.

Federal Rule of Civil Procedure 19 provides that Eureka Group must be joined only if it is subject to service of process, its joinder will not deprive the court of subject matter jurisdiction, and either the court cannot accord complete relief among the existing parties or Eureka Group claims an interest relating to the subject of this action and disposing of the action in Eureka Group's absence may impede its ability to protect the interest claimed or leave an existing party at risk of incurring multiple obligations. *See* FRCP 19(a)(1).

As alleged in the Second Amended Complaint, and as explained in plaintiffs' response to the previous motion to dismiss [Dkt. 89], the Eureka Group was an Arkansas limited liability company incorporated by Albert Davis for the sole purpose of consummating the fraudulent scheme designed by Davis. The entity conducted no other business. The Eureka Group's only "business activity" was to set up the account at Arvest Bank so Albert Davis could shift assets of the Chase entities to the Davis related entities and defendants. It was, in essence, a pass-through. It also no longer exists. According to the Arkansas Secretary of State's website, the Eureka Group's charter was revoked effective January 2013. Ex. "C", Eureka Group LLC listing, Arkansas Secretary of State. It has not paid its franchise taxes since 2011. The entity has not been in existence during the entire pendency of this litigation.

Finally, while the fraudulently transferred funds at issue may have passed through Eureka Group's hands, Plaintiffs do not seek recovery from Eureka Group. In fact, the funds transferred to the Eureka Group have now been depleted as a result of fraudulent transfers of those funds back to the Davis Defendants and other entities that they control. None of the Defendants will be exposed to a multiple recovery in Eureka Group's absence and to Plaintiffs' knowledge, Eureka Group does not claim an interest in the fraudulently transferred funds that passed through its hands until the money was gone. If Eureka Group does claim an interest, Mr. Davis would be the

4839-5862-7616.1

one to assert it as Eureka Group's member and incorporator. But thus far, he has only sought to use Eureka Group for evading liability. Even if the Court does decide that the Eureka Group is an indispensable party, which plaintiffs respectfully submit it is not, the correct remedy is not to dismiss this litigation, but rather, an order requiring joinder under Fed. R. Civ. P. 19(a)(2).

### III.     Plaintiffs have Pled a Cognizable Unjust Enrichment Claim as to Xenonti, Inc.

Finally, Xenonti argues that plaintiffs may not maintain an unjust enrichment claim against it because plaintiffs' claim is founded on an express contract. Xenonti is wrong. First, and perhaps most obviously, plaintiffs never had a contract with Xenonti. As evidenced by the allegations in the Second Amended Complaint, all of plaintiffs' direct dealings and contracts were with CMI Holding Company, Inc. and Chase Medical, Inc. Plaintiffs make express breach of contract claims as to these transactions. *See* Second Amended Complaint, [Dkt. 101], ¶¶ 147-152. Xenonti is not named in the breach of contract section because plaintiffs never had a contract with it. Xenonti's entire argument on this point is based upon a completely flawed premise.

The elements of unjust enrichment in Arkansas are simple: Under Arkansas law, "an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *Merchants & Planters Bank & Trust Co. v. Massey*, 302 Ark. 421, 424, 790 S.W.2d 889 (1990) (citing *Frigillana v. Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979)). "There must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 891 (E.D. Ark. 2008) *aff'd sub nom. Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009). Plaintiffs' second amended

complaint clearly makes those allegations as to Xenonti. Second Amended Complaint, [Dkt. 101], ¶¶ 153-155.

Xenonti also claims difficulty in ascertaining which claims were made against it. As ¶ 19 of the Second Amended Complaint explains, Xenonti is among several entities referred to throughout the complaint as the "Chase entities." The Chase entities are implicated in Count I: Fraud/Construction Fraud and Intentional Misrepresentation by Mr. Davis and Chase Entities; Count II: Conversion; Count IV: Unjust Enrichment, Count V: Brach of Fiduciary Duties; Count VI: Piercing the Corporate Veil; Count VII: Civil Conspiracy; Count VIII: Civil RICO Claim; Count IX: Violation of the Arkansas Deceptive Trade Practices Act – All Defendants; Count X: Fraudulent Transfers; and Count XI: Temporary Restraining Order/Constructive Trust. Each of plaintiffs' separate claims refers to either all defendants, the Davis defendants, the Chase entities, or individual defendants by name for clarity as to which defendants are implicated by which claim. As explained above, Xenonti was defined as a member of the Chase entities at the outset of the second amended complaint. While plaintiffs believe these designations are clear, if the Court deems further revision and amendment is necessary, plaintiffs will certainly comply.

## Conclusion

Xenonti's motion to dismiss must be denied. This Court has jurisdiction over Xenonti by virtue of Arkansas' long-arm statute, and Xenonti's contacts with the state, both as a related Chase entity, and by and through its sole director, David Hernon. Further, the Eureka Group, which was created and operated solely to perpetuate defendants' fraudulent scheme, is not a necessary party to this litigation. In fact, it does not even exist, and its sole member, Albert Davis, is already a defendant in this litigation. Finally, plaintiffs have clearly designated what

claims they have against Xenonti and the other defendants.  Even if this Court determines that clarification is necessary, the proper remedy is amendment, not dismissal.

WHEREFORE, having fully pled, Plaintiffs respectfully pray that Defendant's Motion to Dismiss be denied, for their costs and attorney's fees incurred herein, and for all other relief to which they may be entitled.

                                  **KUTAK ROCK LLP**

                                  Respectfully submitted,

BY:      */s/ Ashley Welch Hudson*
            ASHLEY HUDSON, Esq.  (AR 2007136)
            **KUTAK ROCK LLP**
            124 West Capitol Avenue, Suite 2000
            Little Rock, Arkansas  72201
            (501) 975-3000 Telephone
            (501) 975-3001 Facsimile
            ashley.hudson@kutakrock.com

            and

            RUSSELL ATCHLEY, Esq.  (AR 82077)
            KYLE T. UNSER, Esq. (AR 2007133)
            **KUTAK ROCK LLP**
            234 East Milsap Road, Suite 400
            Fayetteville, Arkansas 72703
            (479) 973-4200 Telephone
            (479) 973-0007 Fax
            russell.atchley@kutak.rock.com
            kyle.unser@kutakrock.com

*Attorneys for Plaintiffs*
*Alice L. George, Individually*
*and as Trustee For The*
*Burton O. George Revocable Trust; And*
*First National Bank Of North Arkansas, Custodian*
*of The Alice George Individual Retirement Account*
*f/k/a The Burton O. George Individual Retirement*
*Account*

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 21st day of November, 2014, a true and correct copy of the above and foregoing document was electronically transmitted to the Clerk of the Court using the CM/ECF System for filing which gives automatic notice to any counsel registered with the Court for this particular case and that a copy was mailed via U.S. Mail and emailed to all *Pro Se* Defendants and counsel not registered with the Court.

Stephen B. Niswanger
Centre Place Building
212 Center Street, 11$_{th}$ Floor
Little Rock, AR 72201
steve@niswangerlawfirm.com

Jeremy T. Brown
1909 Woodall Rodgers, Ste. 500
Dallas, TX 75201
jbrown@milbyfirm.com

Erik P. Danielson
Danielson Law Firm, PLLC
2195 N. College Ave.
Fayetteville, AR 72703
erik.danielson@danielsonlawfirm.com

Tex Wooters, *Pro Se*
2537 Vellano Ln
Edmond, OK 75234C

Donald Hernon, *Pro Se*
33 Murphy's Way
Lyman, ME 04002

Suresh Reddy, *Pro Se*
885 E. Collins Blvd.
Suite 110
Richardson, TX 75081

David Tayce, *Pro Se*
885 E. Collins Blvd.
Suite 110
Richardson, TX 75080

                                                                         /s/ Ashley Welch Hudson_____

4839-5862-7616.1