IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**ALICE L. GEORGE, et. al.**                                              **PLAINTIFFS**

v.                          NO. 3:13-CV-03058-PKH

**ALBERT M. DAVIS, et. al.**                                              **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION TO STRIKE KDL'S MOTION TO DISMISS AND, ALTERNATIVELY, RESPONSE TO SEPARATE DEFENDANT KDL MEDICAL, INC.'S MOTION TO DISMISS

COME NOW the Plaintiffs, and for their Response to the Motion to Dismiss filed by Separate Defendant KDL Medical, Inc. ("KDL"), state the following to-wit:

**Introduction**

KDL has filed its motion to dismiss under Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction. Its filing is untimely, as KDL's answer or other responsive pleading was due no later than November 6, 2014. KDL waited over two weeks after its deadline to file this motion to dismiss, and did so without following the most basic requirements in Rule 6, which requires a late-filing party to first file a motion with this Court requesting leave to proceed. Rather than do so, KDL filed this motion in willful disregard for the Court's rules. Thus, KDL's motion to dismiss should be stricken.

If the Court is not inclined to strike KDL's motion to dismiss, it should be denied. As described in more detail below, plaintiffs have pled that KDL has sufficient contacts with the State of Arkansas as a "Chase entity" (as defined in plaintiffs' Second Amended Complaint), and by virtue of its admitted contacts with the state through its sale of medical equipment. KDL's motion should be denied.

## I. KDL's Motion is Untimely and Should Be Stricken

KDL was served with the plaintiffs' second amended complaint on October 17, 2014. Fed. R. Civ. P. 12(a)(1)(A)(i) states a defendant **must** serve its answer within twenty-one (21) days of service of a summons and complaint, thus KDL's answer was due on November 6, 2014. KDL did not file its answer that day, and in fact, filed nothing until eighteen (18) days later. KDL actually acknowledges its untimely filing, but attempts to justify it through a tortured reading of Fed. R. Civ. P. 12. In essence, KDL argues that Rule 12(b) allows a motion to dismiss any time "before pleading," and because KDL has not filed a responsive pleading, its motion to dismiss is timely. This reading of the Rule completely disregards the mandatory language in Rule 12(a)(1)(A)(i), which requires that a responsive pleading be filed within twenty-one (21) days of service.

Federal Rule of Civil Procedure 6(b) authorizes courts to accept late filings where the failure to timely file is the result of "excusable neglect." Fed. R. Civ. P. 6(b). Rule 6(b)(1)(B) requires that, if a the time to answer or plead has already expired, the Court may extend the time on motion of the party. Fed. R. Civ. P. 6(b)(1)(B). In *Pioneer Inv. Servs. Co. v. Brunswich Assoc. Ltd. P'ship*, the Supreme Court held that whether a party's failure to meet a deadline is excusable is an equitable determination, "taking account of all the relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 392 (1993). In making this equitable determination, the Court listed a number of relevant factors the trial court should consider: (1) the danger of prejudice to the non-moving party; (2) the potential impact on the proceedings; (3) the reason for the delay, including whether it was within the party's control; and (4) whether the party acted in good faith. *Id.*; *see also Sugarbaker v. SSM Health Care*, 187 F.3d 853, 855-56 (8th Cir. 1999) (applying factors to

"excusable neglect" under Rule 6(b)); *Maritz, Inc. v. C/Base, Inc.*, No. 4:06CV761 CAS, 2007 WL 2302511, at *2 (E.D. Mo. Aug. 7, 2007).

      A.    *KDL has given no justifiable excuse for its delay in filing*

The Eighth Circuit has indicated that the reason for a party's delay is a key consideration in determining whether the party's negligence is excusable. *See Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.2000) ("The four Pioneer factors do not carry equal weight; the excuse given for the late filing must be given greatest import."); *Maritz, Inc*. at *2. KDL has offered no justification for its delayed filing. KDL did not even attempt to file a motion requesting that this Court grant it leave to file its motion to dismiss out of time, even though Rule 6(b) <u>requires</u> that a party do so if the time to respond has expired. KDL admits that it was aware its time to respond had expired. It also attempts to twist Rule 12 to excuse its late filing, thus, it cannot be assumed that its failure to comply with Rule 6 was a product of "excusable neglect." Unlike the majority of cases decided under the "excusable neglect" standard. KDL did not inadvertently miss a deadline because of faulty record keeping (*Union Pacific R.R. Co. v. Progress Rail Servs. Corp*., 256 F.3d 781, 783 (8th Cir. 2001)); miscalculation of a deadline (*Hartford Cas Ins. Co. v. Food Barn Stores, Inc*., 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997)); problems in receiving mail (*Feeney v. AT & E, Inc*., 472 F.3d 560, 562 (8th Cir. 2006)); or the relocation of counsel's offices (*Harlow Fay, Inc. v. Federal Land Bank*, 993 F.2d 1351, 1352 (8th Cir.1993)). KDL's failure to file was not based on inadvertence or mistake. Rather, based on counsel's representations (or lack thereof) in its motion and brief, KDL's failure to timely file was simply a willful violation of the Court's rules. KDL ignored the deadline, ignored the requirement to file a request with the Court to file out of time, and assumed that it was entitled to its untimely filing without further comment or justification.

B.   *Plaintiffs will suffer prejudice*

In spite of its argument to the contrary, KDL's untimely filing will, in fact, prejudice plaintiffs in this matter. Filed contemporaneously with their response to KDL's motion to dismiss is plaintiffs' motion for default judgment as to KDL. KDL's failure to answer timely under Rule 6 has put it in default. Its untimely motion to dismiss does not cure that default, and thus, plaintiffs are entitled to a default judgment against the entity.

C.   *KDL has not acted in good faith*

KDL's delayed filing was not done in good faith. It has provided no justification for its untimely filing. It has failed to file a motion to request leave to file outside the time. Its counsel is located in Fayetteville, Arkansas, and is ostensibly familiar with this Court's rules and the deadlines associated with federal practice. KDL has made no attempt to contact plaintiffs' counsel to request additional time or to alert plaintiffs' counsel of the reasons for its delay. KDL blatantly disregarded this Court's deadlines for no reason.

**II.   This Court has Personal Jurisdiction over KDL**

If this Court is inclined to hear KDL's motion on the merits, its motion should still be denied. KDL alleges it does not have sufficient contacts with the State of Arkansas to reasonably expect to be hailed into court in this state. However, as plaintiffs stated in the second amended complaint, the entity defendants (including KDL), referred to collectively as the "Chase entities,"[1] are all interrelated, created to shift and move defendant Albert Davis's assets from one scheme to another in an effort to shield them from creditors such as plaintiffs. KDL and the

---

[1] The "Chase entities" identified in the second amended complaint are KDL a/k/a Chase Medical, a/k/a Cardiom Medical, CMI Holding Company, Inc., Chase Medical, Inc., Chase Medical Technologies, Inc., Phi Health, Inc. d/b/a Phi Med Products, Inc., and Xenonti, Inc. Second Amended Complaint, ¶ 19.

other Chase entities operate as the alter-egos of Davis and his partners, and plaintiffs have alleged sufficient contact by KDL with the State of Arkansas to confer this Court's jurisdiction.

Once a defendant makes a motion challenging personal jurisdiction, "[t]he plaintiff bears the burden of proving facts supporting personal jurisdiction." *Wells Dairy, Inc. v. Food Movers Int'l., Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir.2004)). When considering a motion to dismiss for lack of personal jurisdiction, the Court will review "the affidavits and exhibits presented with the motions and in opposition thereto," as well as the pleadings. *Id.* (quoting *Dever*, 380 F.3d at 1072). "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Digi–Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Id.*

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). Arkansas' long-arm statute confers jurisdiction to the fullest constitutional extent, so this Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus. v. Maples Inds., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The

Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction. Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id*. at 414. *See also Bell Paper Box*, 22 F.3d at 819 (identifying two types of personal jurisdiction—specific jurisdiction and general jurisdiction—and noting that the former "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," while the latter "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose").

Both theories of personal jurisdiction require "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). If a court determines that a defendant has minimum contacts with the forum state, it may then consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

    A.    *Specific Jurisdiction*

KDL Medical, Inc. d/b/a Chase Medical, d/b/a Cardiom Medical, was registered as a for-profit corporation in Texas on October 18, 2006. Ex. "A", Texas Certificate of Formation. Its registered agent for service is Jackie LaFollette (Albert Davis's sister), 1878 Firman Drive,

6

Richardson, TX 75081, and Albert Davis is the President and Director. Ex. "B", Texas Secretary of State Public Information Report. Defendants CMI Holding Company, Inc. and Chase Medical, Inc. are also located at the Firman Drive address. In addition, the Eureka Group, LLC, an Arkansas entity used by Davis to shift money to and from various entities, shared the fictional name "Cardiom Medical" with KDL. Ex. "C", Arkansas Secretary of State Eureka Group, LLC records.

The Eighth Circuit has established a five-factor test—the first three factors being the most important—to determine the sufficiency of the defendant's contacts. Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003)

    1.    <u>Nature, Quality and Quantity of KDL's Contacts with Arkansas in Relation to Facts Alleged in the Second Amended Complaint</u>

The Second Amended Complaint makes the following factual allegations as KDL:

- ¶ 14: KDL Medical, Inc. a/k/a Chase Medical, a/k/a Cardiom Medical, Inc. is a Texas corporation, and is a citizen of the State of Texas by virtue of the fact that it is organized under the laws of the State of Texas and its principal place of business is in Richardson, Texas. Its registered agent is Jackie LaFollette, 1878 Firman Drive, Richardson, Texas 75081. KDL Medical, Inc. a/k/a Chase Medical, a/k/a Cardiom Medical, Inc. is the alter ego of the Davis Defendants herein.

- ¶ 14: "Separate Defendants CMI Holding Company, Inc., Chase Medical, Inc., Chase Medical Technologies, Inc., Phi Health, Inc. d/b/a Phi Med Products, Inc., Xenonti, Inc., and **KDL Medical, Inc. a/k/a Chase Medical, a/k/a Cardiom Medical, Inc.**, are related entities and are under the direct operation and control of some or all of the Davis Defendants, and are referred to hereinafter as the "Chase Entities". Upon information and belief, at all times relevant to this action, these

7

associated entities were or are used to perpetuate the fraud on Plaintiffs as outlined in more detail below."

The second amended complaint goes on to make a number of factual allegations against the Chase entities regarding their contacts with the forum state, including but not limited to:

- ¶ 138: Mr. Davis and his employees, partners and agents, including the Davis Defendants, on behalf of CMI and the Chase Entities, on numerous occasions described in more detail above, made statements and assurances to Plaintiffs regarding their investment that they knew or had reason to know were false, or in a reckless manner without knowing whether such representations were true, and while failing to review information that would have disclosed the inaccuracy of the representations when a duty to review existed.

- ¶ 139: Mr. Davis and his employees, partners, and agents, including the Davis Defendants, on behalf of CMI and the Chase Entities made the false representations with the intention of inducing the Plaintiffs into refraining from hiring a third party to investigate the bankruptcy or their investment.

- ¶ 163: Upon information and belief, CMI and Chase Medical Technologies have virtually no assets with which they can satisfy their financial obligations to Plaintiffs. The Chase Entities were established by the Davis Defendants for the purpose of perpetrating a fraud upon the Plaintiffs, and were sufficiently undercapitalized as to render the use of a corporate shield to protect the owners of the Chase Entities from personal liability unconscionable.

- ¶ 165: The Davis Defendants used CMI and Chase Medical Technologies as an instrumentality of their own personal affairs, and further used these corporations' assets (and the investments of Plaintiffs) to fund the Chase Entities in this case, which have operated as alter egos to the Davis Defendants and are closely related to the other corporate defendants in this litigation.

- ¶ 168: The Davis Defendants and Chase Entities knowingly entered into a conspiracy to divest Plaintiffs of their investment in order to wrongfully use the investment for purposes other than those agreed upon by the parties, and knowingly misrepresented material facts to Plaintiffs.

- ¶ 189: However, the Davis Defendants instead caused Eureka Group, LLC, to further transfer the Transferred Funds received by it back to the Davis Defendants, the Chase Entities, and other entities controlled or owned by the Davis Defendants as described in paragraphs 59-133 above.

The above factual allegations, read with others included in the complaint, are sufficient to allege KDL's contacts within the state. While KDL presented the affidavit of Jackie LaFollette stating

that KDL does not do much business in the state, maintain properties or employees in the state, or advertise its services in the state, the affidavit was silent as to the factual allegations in the second amended complaint regarding KDL's specific contacts in Arkansas as part of Albert Davis's larger scheme to defraud plaintiffs. As demonstrated above and in the second amended complaint, KDL, along with the other Chase entities, engaged in a systematic, ongoing, targeted, fraudulent scheme to shift assets from one entity to another to shield those assets from creditors, including plaintiffs and other Arkansas residents, for the benefit of Albert Davis and his partners. This constitutes significant contact with the state.

The Eighth Circuit addressed the issue of specific jurisdiction on the basis of the activities of related corporations and individuals in *Epps v. Stewart Information Services Corp.*, 327 F.3d 642 (8th Cir. 2003). The Court explained, "Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation. *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) (citing *Frazier v. Alabama Motor Club, Inc.*, 349 F.2d 456, 459 (5th Cir.1965); *Industrial Research Corp. v. General Motors Corp.*, 29 F.2d 623, 625 (N.D.Ohio, 1928); *Karlin v. Avis*, 326 F.Supp. 1325 (E.D.N.Y.1971))." *Epps*, 327 F.3d at 649. Here, this Court's jurisdiction over KDL is based not only on KDL's activities in the state, but also upon the activities of its related entities, officers, and owners, including Albert Davis, who operated KDL as their alter ego.

2. Convenience of the Parties

Jackie LaFollette, in her affidavit in support of KDL's motion to dismiss, makes a passing argument that Arkansas represents an inconvenient forum for KDL. Even so, this factor still weighs in favor of Arkansas's jurisdiction. As previously stated, KDL's President is

Separate Defendant Albert Davis, who is implicated not only individually, but as a result of his role in all of the Chase entities. He is clearly subject to this Court's jurisdiction and will appear for deposition on December 15, 2014, and presumably for hearings whether KDL is dismissed or not. Likewise, Jackie LaFollette, Albert Davis's sister is not only a director and agent for service for KDL, but also owns or owned approximately 150,000 shares in Separate Defendant Phi Health, Inc., as do separate defendants Suresh Reddy (882,500 shares), David Hernon (882,500 shares) and David Tayce (782,500 shares). Ex. "D" Phi Health, Inc. Stock Options List. Thus, there is no inconvenience for KDL since five of its principals are participants in this litigation independent of their role with KDL.

      B.    *General Jurisdiction*

KDL's contacts and relationships with plaintiffs, the Chase entities, Albert Davis and his partners are sufficient to subject it to the specific jurisdiction of this Court. In the alternative, if the Court deems those contacts insufficient, plaintiffs believe KDL's unrelated business contacts in Arkansas are still sufficient to subject it to the Court's jurisdiction.

If the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, (1984) When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic. *Id*. at 414, 104 S.Ct. 1868.

Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum state. As the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) explained:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. *Keeton v. Hustler Magazine, Inc.*, *supra*, 465 U.S., at 774–775, 104 S.Ct., at 1478; *see also Calder v. Jones*, 465 U.S., at 778–790, 104 S.Ct., at 1486–1487; *McGee v. International Life Insurance Co.*, 355 U.S., at 222–223, 78 S.Ct., at 200–201. *Cf. Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 317, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943).

Jackie LaFollette states in her affidavit that "KDL has occasionally sold products to customers in Arkansas. In 2014, KDL sold one product to a customer in Little Rock, Arkansas." LaFollette Aff. ¶ 9. LaFollette fails to further define what constitutes "occasional" sales to Arkansas customers, although the company has existed since 2006, and her affidavit plainly states that KDL's sales contacts in Arkansas encompass more than just the one 2014 sale. KDL has availed itself of this jurisdiction and its customers. This Court has jurisdiction.

**Conclusion**

KDL's motion to dismiss should be stricken. If the Court is not inclined to strike the motion, then it must be denied. This Court has jurisdiction over KDL by virtue of Arkansas's long-arm statute, and KDL's contacts with the state as a related Chase entity.

WHEREFORE, having fully pled, Plaintiffs respectfully pray that Defendant's Motion to Dismiss be stricken, or, in the alternative, denied, for their costs and attorney's fees incurred herein, and for all other relief to which they may be entitled.

**KUTAK ROCK LLP**

Respectfully submitted,

BY:    */s/ Ashley Welch Hudson*
      ASHLEY HUDSON, Esq. (AR 2007136)
      **KUTAK ROCK LLP**
      124 West Capitol Avenue, Suite 2000
      Little Rock, Arkansas 72201
      (501) 975-3000 Telephone
      (501) 975-3001 Facsimile
      ashley.hudson@kutakrock.com

      and

      RUSSELL ATCHLEY, Esq. (AR 82077)
      KYLE T. UNSER, Esq. (AR 2007133)
      **KUTAK ROCK LLP**
      234 East Milsap Road, Suite 400
      Fayetteville, Arkansas 72703
      (479) 973-4200 Telephone
      (479) 973-0007 Fax
      russell.atchley@kutak.rock.com
      kyle.unser@kutakrock.com

      *Attorneys for Plaintiffs*
      *Alice L. George, Individually*
      *and as Trustee For The*
      *Burton O. George Revocable Trust; And*
      *First National Bank Of North Arkansas, Custodian*
      *of The Alice George Individual Retirement Account*
      *f/k/a The Burton O. George Individual Retirement*
      *Account*

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 10th day of December, 2014, a true and correct copy of the above and foregoing document was electronically transmitted to the Clerk of the Court using the CM/ECF System for filing which gives automatic notice to any counsel registered with the Court for this particular case and that a copy was mailed via U.S. Mail and emailed to all *Pro Se* Defendants and counsel not registered with the Court.

Stephen B. Niswanger
Centre Place Building
212 Center Street, 11th Floor
Little Rock, AR 72201
steve@niswangerlawfirm.com

Jeremy T. Brown
1909 Woodall Rodgers, Ste. 500
Dallas, TX 75201
jbrown@milbyfirm.com

Erik P. Danielson
Danielson Law Firm, PLLC
2195 N. College Ave.
Fayetteville, AR 72703
erik.danielson@danielsonlawfirm.com

Tex Wooters, *Pro Se*
2537 Vellano Ln
Edmond, OK 75234C

Donald Hernon, *Pro Se*
33 Murphy's Way
Lyman, ME 04002

Suresh Reddy, *Pro Se*
885 E. Collins Blvd.
Suite 110
Richardson, TX 75081

David Tayce, *Pro Se*
885 E. Collins Blvd.
Suite 110
Richardson, TX 75080

Jason H. Wales
Amy C. Martin
Everett, Wales & Comstock
P.O. Box 8370
Fayetteville, AR 72703

                                              */s/ Ashley Welch Hudson*