IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ALICE L. GEORGE, individually and as Trustee for the
Burton O. George Revocable Trust; and FIRST NATIONAL
BANK OF NORTH ARKANSAS, custodian of the Alice
George Individual Retirement Account formerly known as
the Burton O. George Individual Retirement Account                                                               PLAINTIFFS

v.                                              Case No. 3:13-CV-03058

ALBERT M. DAVIS, individually and as founder, organizer,
officer, director, member, general partner, limited partner, and
agent of some, if not all, defendant entities; DAVID M.
HERNON, individually and as founder, organizer, officer,
director, member, general partner, limited partner, and agent
of all defendant entities; SURESH REDDY, individually and
as founder, organizer, officer, director, member, general partner,
limited partner, and agent of some, if not all, defendant entities;
TEX WOOTERS, individually and as CFO of Chase Medical,
Inc.; DAVID TAYCE, individually and as founder, organizer,
officer, director, member, general partner, limited partner, and
agent of some, if not all, defendant entities; CHASE MEDICAL,
INC.; CHASE MEDICAL TECHNOLOGIES, INC.; CHASE
MEDICAL TECHNOLOGIES, LP; PHI HEALTH, INC. d/b/a
PHI Med Products, Inc.; PHI HEALTH, LP; CMI HOLDING
COMPANY, INC.; DONALD HERNON; LBDS HOLDING
COMPANY, LLC; IHEART, LLC; MITTA SURESH;
METROPLEX IMAGING, L.P.; TEASLA PARTNERS, LP;
LUX IMAGING SYSTEMS, LLC; KDL MEDICAL, INC.
d/b/a Chase Medical; CARDIOM, LLC; XENONTI, INC.;
METROPLEX IMAGING, G.P., LLC; MENTIS, LLC; VEENA
ANUMALA REDDY; and JOHN DOES 1-25                                                                                 DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendant Teasla Partners, L.P.'s ("Teasla") motion to stay discovery

(Doc. 133) and amended motion to dismiss (Doc. 137), Defendant Xenonti, Inc.'s ("Xenonti")

motion to dismiss and for a more definite statement (Doc. 135), Plaintiffs' motion to voluntarily

dismiss Teasla (Doc. 138), and the parties' corresponding documents. For the following reasons,

the Court finds that Plaintiffs' motion to voluntarily dismiss Teasla should be GRANTED, that

Teasla's motions (Docs. 133 and 137) should be DENIED AS MOOT, and that Xenonti's motion to dismiss and for a more definite statement should be DENIED.

### I.  Motions Involving Teasla

Teasla filed a motion to dismiss and contemporaneously filed a motion to stay discovery and for entry of a new scheduling order in the event that its motion to dismiss was unsuccessful. Plaintiffs effectively responded to Teasla's motion to dismiss by filing their own motion to voluntarily dismiss Teasla due to a lack of personal jurisdiction (Doc. 138). It appearing that the parties are in agreement, the Court finds that Plaintiffs' motion should be GRANTED. Defendant Teasla is hereby DISMISSED WITHOUT PREJUDICE and Teasla's pending motions (Docs. 133 and 137) are therefore DENIED AS MOOT.

### II.  Xenonti's Motion to Dismiss

Xenonti moves for full or partial dismissal on three separate grounds: (1) that the Court lacks personal jurisdiction over Xenonti; (2) that Plaintiffs' claims should be dismissed for failure to join an indispensable party, Eureka Group, LLC ("Eureka"); and (3) that Plaintiffs' claim for unjust enrichment against Xenonti must fail because it is based on an express contract. In addition, should Plaintiffs prevail on Xenonti's instant motion, Xenonti seeks to have Plaintiffs state their claims against it more clearly. The Court will address each of these issues in turn.

#### 1.  Personal Jurisdiction Over Xenonti

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted). "For the purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519,

522 (8th Cir. 1996). Nevertheless, "[t]he plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647 (citations omitted). While Plaintiffs bear the ultimate burden of proof here, jurisdiction need not be proven by a preponderance of the evidence until trial or until the Court holds an evidentiary hearing.[1] *Id.*

"Personal jurisdiction in a diversity case exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011) (citing *Dever*, 380 F.3d at 1072). Arkansas's long-arm statute provides for personal jurisdiction over a defendant "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code. Ann. § 16-4-101. "Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)).

There are two ways in which the due process clause may be satisfied such that minimum contacts between the defendant and the forum state are established: (1) specific jurisdiction and (2) general jurisdiction. Specific jurisdiction arises when a defendant purposefully directs its activities at the forum state, and the lawsuit "relates to" or "arises from" those activities. *Johnson*

---

[1] Neither party has requested a hearing on the instant motion nor does the Court believe that any hearing is necessary.

*v. Arden*, 614 F.3d 785, 794–95 (8th Cir. 2010). The Court must determine whether the activities in question reveal that the defendant "purposely availed" itself of the benefits and protections of the forum state such that he should anticipate being subject to the jurisdiction in the forum state. *Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). General jurisdiction, on the other hand, refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

Xenonti's arguments in moving for dismissal due to a lack of personal jurisdiction are limited to the minimum contacts and due process framework outlined above. Specifically, Xenonti claims that it has no contacts with Arkansas and is only involved in this suit due to having received a single payment of $150,000 from Eureka. Plaintiffs do not directly challenge these arguments. Rather, Plaintiffs maintain that the Court may properly assert personal jurisdiction over Xenonti because it is the alter ego of Defendant David Hernon and has therefore shed its corporate protections. Xenonti has not responded to Plaintiffs' arguments.

"Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps*, 327 F.3d at 649 (citing *Lakota Girl Scout Council v. Havey Fund-Raising Mgmt.*, 519 F.2d 634, 637 (8th Cir. 1975). "[I]f the corporation is [the individual's] alter ego, its contacts are his and due process is satisfied." *Lakota*, 519 F.2d at 637. A court's assertion of jurisdiction on this basis depends on whether the plaintiffs are able to pierce the corporate veil, which is determined by state law. *Epps*, 327 F.3d at 649 (citing *Lakota Girl Scout Council*, 519 F.2d at 637). Although the laws of veil-piercing apply, the standard for doing so is typically less stringent for the purposes of exercising personal jurisdiction

rather than for imposing liability.  *See Torchmark Corp. v. Rice*, 945 F. Supp. 172, 177 (E.D. Ark. 1996) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1198 (5th Cir. 1985)) (internal quotations omitted).  Therefore, in order for Plaintiffs to prevail on Xenonti's motion to dismiss, they must make a prima facie showing that the Court may assert personal jurisdiction over Hernon and that the Court should disregard Xenonti's corporate form under the relevant state law for corporate veil-piercing.

The Court finds that its assertion of personal jurisdiction over Hernon is proper.  First, Hernon admitted in his amended answer (Doc. 153, ¶ 41) that he traveled to Berryville, Arkansas in the process of dealing with the transactions at issue.  Because Hernon purposefully availed himself of the benefits and protections of Arkansas while traveling to deal with the transactions at issue, he has sufficient minimum contacts with Arkansas so as to satisfy due process.  Furthermore, Hernon has been participating in this litigation since appearing and filing an answer to the original complaint on July 31, 2013.  "[A]n individual may submit to the jurisdiction of the court by appearance." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).  Therefore, the Court also finds that Hernon has implicitly consented to this Court's assertion of personal jurisdiction over him.  With personal jurisdiction over Hernon established as proper, Plaintiffs need only make a prima facie showing that Xenonti and Hernon are alter egos (i.e., that Xenonti's corporate form should be disregarded) in order to prevail on the instant motion to dismiss on personal jurisdiction grounds.

Regarding the alter ego analysis, the Court notes that there is a choice of law issue as to which state's substantive law applies for piercing the corporate veil—Arkansas substantive law or the substantive law of Texas, Xenonti's state of incorporation.  The parties have not adequately briefed this issue.  Plaintiffs seem to have merely presumed that Texas law applies, and Xenonti

5

has not addressed Plaintiffs' arguments in any respect. However, even though the parties have not adequately briefed the issue, the Court finds that Plaintiffs have met their burden no matter which state's law should apply for piercing the corporate veil. Under Texas law, alter ego theory applies when the corporation is used as a "mere tool or business conduit" of an individual. *Schlueter v. Carey*, 112 S.W.3d 164, 169 (Tex. Ct. App. 2003). Courts may disregard the corporate fiction "where it appears that the individuals are using the corporate entity as a sham to perpetuate a fraud . . . ." *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex. 1968). Arkansas law is similar. Specifically, "Arkansas courts have stated that the doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent injustice." *Epps*, 327 F.3d at 649 (citing *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. 1981). In Arkansas, "[p]iercing the fiction of a corporate entity should be applied with great caution." *Epps*, 327 F.3d at 649 (citing *Banks v. Jones*, 390 S.W.2d 108, 111 (Ark. 1965). "It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded." *Epps*, 327 F.3d at 649 (citing *Rounds & Porter Lumber Co. v. Burns*, 225 S.W.2d 1, 2 (Ark. 1949).

  Plaintiffs support their contention that Xenonti's corporate form should be disregarded with listings from the Texas Secretary of State's office and discovery responses from Xenonti (Doc. 135, Exs. 1–3).[2] These documents purport to show that Hernon is Xenonti's registered agent for service of process; that Hernon is the only current or past limited partner, employee, or agent of Xenonti; that Hernon is the sole director of Xenonti; that a tax forfeiture of Xenonti occurred on May 28, 2010—eight months before the alleged fraudulent acts occurred; and that Xenonti is

---

[2] "[I]n a motion to dismiss, a court may consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record.'" *United States ex rel. Kraxberger v. Kansas City Power and Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014).

currently listed as having forfeited its existence. Essentially, Plaintiffs argue that these documents show that Xenonti accepted a fraudulent payment months after it had forfeited its existence as a corporation, and all while Hernon is and was the only person ever associated with the entity.

After considering the parties' submissions and having given Plaintiffs the deference they are due, the Court finds that Plaintiffs have made a prima facie showing that this Court should disregard any corporate form to which Xenonti may still be entitled and impute Hernon's contacts with Arkansas onto Xenonti for personal jurisdiction purposes. Accordingly, to the extent Xenonti seeks dismissal due to a lack of personal jurisdiction, the Court finds that its request should be DENIED. The Court notes that it declines to find, definitively, that Xenonti and Hernon are alter egos, as that question is reserved for a final determination by the jury at trial or until the issue is more thoroughly addressed by the parties in a later motion.

### 2. Failure to Join Indispensable Party

Xenonti also moves to dismiss Plaintiffs claims for failure to join an indispensable party, Eureka. Xenonti's argument consists primarily of pointing out that the funds Plaintiffs now seek from Xenonti first passed through Eureka. In response, Plaintiffs submitted documents from the Arkansas Secretary of State purporting to show that Eureka's corporate charter was revoked in Janaury 2013. In addition, Plaintiffs allege that Eureka's sole business activity was to unlawfully distribute funds to which the Plaintiffs were entitled to other entities, that all of Eureka's funds have been depleted, and that defendant Albert Davis is the individual responsible for Eureka's business dealings.

Federal Rule of Civil Procedure 19(a) determines whether a party is indispensable and must be joined. Rule 19 provides that an absent party, in this instance Eureka, must be joined only if it is subject to service of process, its joinder will not deprive the Court of subject-matter jurisdiction,

and either the Court cannot accord complete relief among existing parties or the absent party claims an interest relating to the subject of this action and disposing of the action in its absence may impede its ability to protect the interest claimed or leave an existing party at risk of incurring multiple obligations. Xenonti's arguments fail to show why Eureka is indispensable to this action so as to require it be joined, much less why this Court should dismiss this action outright. Specifically, while it may be true that the funds sought by Plaintiffs first passed through Eureka, Xenonti has failed to show why this Court cannot now accord complete relief among the existing parties. Furthermore, Eureka itself has not claimed any interest related to this action. Because Xenonti has failed to show either of these, and has therefore failed to meet its burden on its motion to dismiss on these grounds, the Court finds that Xenonti's motion to dismiss for failure to join an indispensable party should be DENIED.

### 3. Plaintiffs' Unjust Enrichment Claim

Xenonti argues that Plaintiffs' unjust enrichment claim against it should fail because the claim is based on an express contract and the parties should be bound by their express agreements. Plaintiffs respond that they have never had any contract with Xenonti and that their breach of contract claims have properly been asserted against those co-defendants with whom they had express contracts. In Arkansas, "[a]n action based on unjust enrichment is maintainable in all cases where a person has received money under such circumstances that, in equity and good conscience, he [or she] ought not to retain it." *Merchants & Planters Bank & Trust Co. of Arkadelphia v. Massey*, 790 S.W.2d 889, 891 (Ark. 1990). That is precisely the situation alleged here—Plaintiffs allege that money owed to Plaintiffs was transferred to Xenonti and as a result Xenonti was unjustly enriched. Xenonti's argument that Plaintiffs' contracts with other parties

prevent unjust enrichment claims against it is misguided. Accordingly, the Court finds that Xenonti's request to dismiss Plaintiffs' unjust enrichment claim should be DENIED.

Xenonti makes two final requests in its instant motion to dismiss: that the Court stay discovery and enter a new scheduling order and that Plaintiffs be ordered to clarify the claims it asserts against Xenonti. First, in light of the analysis above, the Court finds no reason why discovery should be stayed or a new scheduling order entered. Second, Plaintiffs have adequately explained the claims they assert against Xenonti, both in their complaint and in their brief in response to Xenonti's motion. For those reasons, Xenonti's requests for a stay of discovery, a new scheduling order, and a more definite statement are DENIED.

### III.   Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' motion to voluntarily dismiss Defendant Teasla Partners, L.P. (Doc. 138) is GRANTED. Defendant Teasla Partners, L.P. is hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant Teasla Partners, L.P.'s motion to stay discovery (Doc. 133) and amended motion to dismiss (Doc. 137) are DENIED AS MOOT.

IT IS FURTHER ORDERED that Defedant Xenonti, Inc.'s motion to dismiss and for a more definite statement (Doc. 135) is DENIED.

IT IS SO ORDERED this 28th day of January, 2015.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE